IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| WILLIAM Z. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF GREENSBORO, | ) | |
| | ) | |
| JAMES M. SHWOCHOW, in his | ) | **COMPLAINT** |
| individual and official capacity, | ) | |
| | ) | |
| ERIC G. SIGMON, in his individual and | ) | |
| official capacity, | ) | |
| | ) | |
| JOHNNY L. RAINES, JR., in his | ) | CIVIL ACTION NO. _____ |
| individual and official capacity, | ) | |
| | ) | |
| WILLIAM B. BARHAM, in his | ) | |
| individual and official capacity, | ) | |
| | ) | |
| BRIAN S. WILLIAMSON, in his | ) | |
| individual and official capacity, | ) | |
| | ) | |
| JASON A. LOWE, in his individual and | ) | |
| official capacity, | ) | |
| | ) | |
| B.J. BARNES, Sheriff of Guilford | ) | |
| County in his official capacity, | ) | |
| | ) | |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA, | ) | |
| | ) | |
| JAMES MATTHEW STALLS, in his | ) | |
| individual and official capacity, | ) | |
| | ) | |
| ELIZABETH M. BUSKIRK, in her | ) | |
| individual and official capacity, | ) | |
| | ) | |
| | ) | |

DAVID W. COOK in his individual and            )
official capacity,                             )
                                               )
HOMER F. WILKINS, in his individual            )
and official capacity,                         )
                                               )
THE CITY OF REIDSVILLE,                        )
                                               )
LYNWOOD F. HAMPSHIRE, in his                   )
individual and official capacity,              )
                                               )
SHANNON C. COATES, in his                      )
individual and official capacity,              )
                                               )
ROBERT A. HASSELL, in his                      )
individual and official capacity,              )
                                               )
THE CITY OF BURLINGTON,                        )
                                               )
CODY A. WESTMORELAND, in his                   )
individual and official capacity,              )
                                               )
ERIC A. WATKINS, in his individual             )
and official capacity,                         )
                                               )
JAMES E. HINSON, JR., in his                   )
individual and official capacity,              )
                                               )
DON WAYNE SCOTT, JR., in his                   )
individual and official capacity, and          )
                                               )
JIM WESTMORELAND, in his                       )
individual and official capacity,              )
                                               )
LINDSAY MICHELLE ALBERT, in                    )
his individual and official capacity,          )
                                               )

_____Defendants.

Plaintiff, complaining of the Defendants, avers:

### *Jurisdiction and Venue*

2

1.    This is an action for relief arising out of violations by the defendants of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983") and for remedies under North Carolina state law for violations of common law.

2.    This Court has original jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343(a)(4); and supplemental jurisdiction over the North Carolina State Law claims pursuant to the provisions of 28 U.S.C. § 1367.

3.    Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b).

## *Parties*

4.    Plaintiff is a citizen and resident of Pleasant Garden, Guilford County, North Carolina.

5.    Upon information and belief, Defendant City of Greensboro ("Greensboro") is a municipal corporation, located in Guilford County, North Carolina, duly chartered under the laws of the State of North Carolina, with all corporate powers enumerated in North Carolina General Statute 16A-1, including the right to be sued.

6.    Upon information and belief, Defendant Jim M. Schochow is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the Greensboro Police Department ("GPD").

7.    Upon information and belief, Defendant James Hinson is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD.

Case 1:18-cv-00969-TDS-LPA   Document 1   Filed 11/20/18   Page 3 of 49

8.     Upon information and belief, Defendant Eric G. Sigmon is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD.

9.     Upon information and belief, Defendant Johnny L. Raines, Jr. is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD.

10.     Upon information and belief, Defendant William B. Barham is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD.

11.     Upon information and belief, Defendant Brian S. Williamson is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD.

12.     Upon information and belief, Defendant Jason A. Lowe is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD.

13.     Upon information and belief, Defendant Don Wayne Scott, Jr. is a citizen and resident of Greensboro, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD and was in fact Chief of Police.

14.     Upon information and belief, Defendant Jim Westmoreland at all relevant times was employed as Greensboro's City Manager.

4

15.    B. J. Barnes ("Sheriff Barnes") is a citizen and resident of Guilford County, and at all times material hereto was the Sheriff of Guilford County.  Sheriff Barnes is sued in this action in his Official Capacity.

16.    Upon information and belief, Travelers Casualty and Surety Company of America is a corporation ("Travelers"), organized under the laws of State of Conneticut and authorized to do business in North Carolina, and at all times material hereto issued a bond to the Sheriff of Guilford County pursuant to the provisions of section 162-8 of the North Carolina General Statutes.

17.    Upon information and belief, James Matthew Stalls is a citizen and resident of Guilford County, and at all times material hereto was employed by the Guilford County Sheriff.

18.    Upon information and belief, Defendant Elizabeth M. Buskirk is a citizen and resident of Guilford County, and at all times material hereto was employed by the Guilford County Sheriff.

19.    Upon information and belief, Homer F. Wilkins is a citizen and resident of Guilford County, North Carolina and at all times material hereto was employed by the Guilford County Sheriff.

20.    Upon information and belief, David W. Cooke is a citizen and resident of Guilford County, North Carolina and at all times material hereto was employed by the Guilford County Sheriff.

21.    Upon information and belief, Defendant City of Reidsville ("Reidsville") is a municipal corporation, located in Rockingham County, North Carolina, duly chartered

5

under the laws of the State of North Carolina, with all corporate powers enumerated in North Carolina General Statute 16A-1, including the right to be sued.

22. Upon information and belief, Defendant Lynwood F. Hampshire is a citizen and resident of Rockingham County, North Carolina and at all relevant times was employed as a police officer by the Reidsville Police Department ("RPD").

23. Upon information and belief, Defendant Robert A. Hassell is a citizen and resident of Rockingham County, North Carolina and at all relevant times was employed as the Chief of Police for RPD.

24. Upon information and belief, Defendant Shannon C. Coates is a citizen and resident of Rockingham County, North Carolina and at all relevant times was employed as a police officer by the RPD.

25. Upon information and belief, Defendant City of Burlington ("Burlington") is a municipal corporation, located in Alamance County, North Carolina, duly chartered under the laws of the State of North Carolina, with all corporate powers enumerated in North Carolina General Statute 16A-1, including the right to be sued.

26. Upon information and belief, Defendant Cody A. Westmoreland is a citizen and resident of Alamance County, North Carolina and at all relevant times was employed as a police officer by the Burlington Police Department ("BPD").

27. Upon information and belief, Defendant Eric A. Watkins is a citizen and resident of Alamance County and at all relevant times was employed as a police officer by the BPD.

6

28.    Upon information and belief, Sherriff Barnes has waived any sovereign immunity by the purchase of the bond from Travelers.

29.    Upon information and belief, Sheriff Barnes, Greensboro, Reidsville, and Burlington have each waived their sovereign immunity through the purchase of insurance.

30.    Upon information and belief, Defendant Lindsay Michelle Albert is a citizen and resident of Kernersville, Guilford County, North Carolina and at all relevant times was employed as a police officer by the GPD.

### *Background Facts*

31.    From on or around May 2009, through March 6, 2017, Plaintiff was employed by the GPD as a police officer.

32.    In addition to earning a salary from his work with the GPD, Plaintiff earned additional monies by working "off-duty hours" as a police officer, buying and reselling houses, and refurbishing equipment, including lawn equipment.

33.    Guilford County Deputy Defendant Stalls and Plaintiff are step-brothers, as well as brothers-in-law, their wives being sisters.   Upon information and belief, Defendant Stalls is jealous of Plaintiff's ability to make significant income through his purchase and sale of houses and equipment refurbishing.

34.    On or about August 21, 2016, Scott's Tractor reported a theft of nine mowers to the RPD, one of which was recovered immediately in the wood line adjacent to the property.   On August 22, 2016, an officer of the RPD created a report of the stolen

mowers. That officer did not include the serial numbers on the report for the stolen mowers because that information had not yet been provided.

35. On August 24, 2016, Plaintiff purchased a mower from a third party on or near the premises of Sedgefield Lawn and Garden. Plaintiff viewed the mower on several, separate occasions before purchasing it.

36. While considering his purchase of the mower, Plaintiff communicated to Defendant Stalls that he was considering the purchase of the mower. Thereafter, on several occasions, Defendant Stalls communicated to Anita Holder, Plaintiff's mother and Deputy Stalls step-mother, that Defendant Stalls was suspicious of the mower, as well as suspicious of Plaintiff's purchase of other items, all of which Plaintiff legitimately purchased.

37. The mower purchased by Plaintiff was a zero turn John Deere model Z930, weighing between 1200 to 1300 pounds.

38. On August 24, 2016, the mower was delivered to Plaintiff's house.

39. On August 30, 2016, Officer Hampshire of the RPD caused the uploading of the report, including the subsequently obtained serial numbers from the Scott's Tractor theft into National Crime Information Center ("NCIC"). Additionally, Officer Hampshire sent an email to the Piedmont Investigators Group ("PIG"), a regional investigative group of law enforcement agencies and officers, reporting the equipment and serials numbers as stolen. As a result of Defendant Hampshire's email, Guilford County Sheriff Barnes' office would have had notification of the stolen equipment.

8

40.     Upon information and belief, as a result of Defendant Hampshire's email, Sheriff Barnes' office would have notification of the stolen equipment, including Defendant Stalls.

## *Defendants' Conspiracy to Prosecute Plaintiff*

41.     Upon information and belief, acting because of his jealousy and dislike of Plaintiff, Deputy Stalls began spreading rumors about Plaintiff within Sheriff Barnes' office, as well as with local fire stations, suggesting that Plaintiff was stealing and/or dealing in stolen equipment.  Specifically, Deputy Stalls relayed these rumors to Guilford County Deputy Buskirk and Deputy Cooke, who acted on them.     Defendant Buskirk requested information about Plaintiff from Deputy Stalls' wife, which Mrs. Stalls provided.   Deputy Cooke researched the vehicle identification number of the stolen mower.

42.     Over the Labor Day holiday in 2016, Plaintiff's wife requested that her sister, Mrs. Stalls, care for the Plaintiff's dog, while the family was out of town.  The mother of Mrs. Stalls and of Plaintiff's wife, Beth Ross, accompanied the Plaintiff and his family on the out of town trip.

43.     While the Plaintiff, his family, and Ms. Ross were out of town, Mrs. Stalls texted Ms. Ross to clarify when they would all return to Greensboro, North Carolina.

44.     Over that weekend and sometime between September 3 and September 5, 2016, Deputy Stalls entered Plaintiff's house without authorization and without a warrant.

9

45.     Rather than feeding the dog, Deputy Stalls entered into Plaintiff's garage, removed a sheet that was covering the mower Plaintiff had purchased, and photographed the mower and particularly its identification number.

46.     On or about September 7, 2016, Officer Hampshire attended the monthly PIG meeting and shared photographs and information about the mower stolen from Scott's Tractor.  Guilford County Sheriff's deputies would have attended the meeting and been privy to the information Officer Hampshire shared at the meeting.  Upon information and belief, representatives of the State Bureau of Investigation ("SBI"), BPD, RPD, and GPD would also have been present.

47.     On or about September 15, 2016, Plaintiff posted the mower for sale on Craig's List.

48.     Ultimately, the mower was purchased by David and Dennie Terry.  However, before ever contacting Plaintiff about the mower, the Terrys received a text message with a photo of an engine number or serial number.  Shortly thereafter, the Terrys texted Plaintiff and indicated a desire to purchase Plaintiff's mower.

49.     On September 19, 2016, the Terrys purchased the mower from Plaintiff, picking it up from Plaintiff's home around 11:00 pm.  The Terrys declined Plaintiff's offer to deliver the mower to them the next morning, insisting that the mower be purchased September 19, 2016.

50.     On September 20, 2016, after Plaintiff informed Deputy Stalls that the mower had been sold, Mrs. Stalls asked her mother Ms. Ross whether Plaintiff still had possession of the mower.

51.     Also, during the day of September 20, 2016, the Terrys texted Plaintiff that the mower was stolen.  Plaintiff believed the Terrys were having buyer's remorse and fabricating claims.

52.     Exactly one minute after Scott's Tractor closed business for the day on September 20, 2016, Ms. Terry called her personal acquaintance Deputy Lilje of the Durham County Sheriff's office ("DCS") and requested that he check the serial number 1TC915BAAET020866, allegedly to determine whether the mower they purchased from Plaintiff was stolen.  The DCS never physically viewed the mower or any of its accompanying paperwork to verify the serial number of the mower sold by the Plaintiff. Instead, the DCS simply ran the number the Terrys provided.

53.     Upon information and belief, communication between DCS and RPD via the NCIC confirmed that the serial number provided to the DCS by the Terrys was the serial number from one of the mowers reported stolen from Scott's Tractor.  DCS created a report regarding its interaction with the Terrys, and the report contains the serial number provided by the Terrys.  The DCS took possession of the mower without viewing or photographing a serial number and per the direction of RPD, had the mower towed and secured.  Towing and storage was provided by Clayton Towing in Durham, North Carolina on September 20, 2016.

54.     Thereafter, the status of the mower's serial number, the one ending 866, was changed in NCIC to "recovered" by RPD.

55.     Through September 2016 and March 2017, Defendant Stalls continued to pester Ms. Holder regarding the mower.  Defendant Stalls relayed to Ms. Holder that he

11

was aware of an alert requesting information about stolen and recovered mowers in Guilford County.

56.    Upon information and belief, on October 7, 2016, Ms. Terry advised Defendant Hampshire that the owner of Scott's Tractor, Scott Cooke, informed her that an insurance company had paid him for losses occasioned by the theft and that Scott's Tractor did not want the mower back.

57.    However, upon information and belief, on November 1, 2016, Mr. Cooke denied to Officer Hampshire that insurance company had paid his claim.

58.    Upon information and belief, although Deputy Buskirk was aware that Deputy Stalls had illegally obtained information concerning the mower in Plaintiff's garage without a warrant or permission, she relayed this information to other law enforcement officers engaged in the investigation.

59.    On November 2, 2016, Officer Hampshire met with personnel, including Deputies Wilkins and Buskirk about Officer Hampshire's investigation of the mower stolen from Scott's Tractor.  Deputy Buskirk identified a photograph shown to her as Plaintiff, who she knew to be employed by GPD and a step brother of Deputy Stalls.

60.    Also on November 2, 2016, after learning that Plaintiff was a police officer, Officer Hampshire requested that the SBI assist his investigation of the alleged thefts from Scott's Tractor.  Agent Denny was assigned to assist.

61.    Also on November 2, 2016, Officer Hampshire and Deputy Wilkins traveled to Plaintiff's home, while Plaintiff's wife was present in the home.  Rather than approaching Mrs. White and requesting permission to enter Plaintiff's garage, Officer

12

Hampshire and Deputy Wilkins, without permission and without a warrant, came upon Plaintiff's property and entered Plaintiff's garage through the open garage door and looked around, noting the presence of a United States Marine Corp flag and police equipment. After looking around, Officer Hampshire and Deputy Wilkins closed the garage door, alerting Mrs. White that someone had been in the garage and causing her alarm.

62. The next day on November 3, 2016, the Terrys traveled to meet with Sheriff Barnes' officers, including Deputies Wilkins and Buskirk, and Officer Hampshire. At that meeting, the Terrys showed those deputies photographs of Plaintiff's house and a photograph of an allegedly hidden serial number for the mower.

63. On November 9, 2016, Plaintiff met with Defendant Hampshire and SBI Agent Denny regarding the alleged theft of the mower. The conversation is recorded.

64. At that meeting, at no time did Plaintiff admit that he was involved in the theft of the mower or any other theft because he was not. At no time did Plaintiff express personal knowledge that the mower was stolen. Plaintiff confirmed that he had sold a mower from his home and provided a signed bill of sale to the Terrys. Both DCS and RPD reports confirm that Plaintiff did provide a signed bill of sale to the Terrys at the time they purchased the mower. Also, Plaintiff specifically informed Agent Denny and Defendant Hampshire that Deputy Stalls was spreading untrue rumors about him, and Agent Denny and Defendant Hampshire failed to investigate whether the basis of the investigation was Deputy Stalls rumor mongering. Indeed, the Chief of the Pleasant Garden fire house eventually banned Deputy Stalls from the firehouse for spreading these

13

rumors, which were so clearly false based on the ridiculous and flimsy "evidence" Deputy Stalls provided to the firefighters, including Facebook videos of someone who was clearly not Plaintiff.

65.     Upon information and belief, on or about November 10, 2016, Officer Hampshire changed the recovered status in NCIC for the mower reported as recovered by DCS back to stolen. Officer Hampshire then reported in NCIC that another one of Scott's Tractor's mowers was "recovered," which mower bore a completely different serial number than the Terry's first reported. The new "recovered" mower bore serial number 1TC930MCPGT043684. Officer Hampshire provided no explanation for the change, which change is to a markedly different number than the number the Terrys asked the DCS to investigate, other than to state "I corrected the NCIC entry for the mower" and referring to the new number as "recovered." Agent Denny and Officer Coates knew of the change and did nothing about it.

66.     On or about December 12, 2016, the owner of Scott's Tractor, Mr. Cooke, picked up from Clayton's Towing the mower the Terrys had purchased from Plaintiff, breaking the chain of custody. Neither Officer Hampshire nor Officer Coates ever actually viewed the mower themselves, and upon information and belief, no law enforcement officer ever viewed the mower while in the Terrys' possession and/or at Clayton's Towing to verify the actual identification number of that mower.

67.     Also, on or about December 12, 2016, Defendant Hampshire obtained a search warrant to view the cell phone numbers for Plaintiff, which numbers include the cell phone used by Plaintiff's wife.

14

68.     In January 2017, the SBI, RPD, and the BPD formed an ad hoc "task force," upon information and belief under the name of "Breaking Bad", to investigate the theft of mowing equipment. No formal agreements exist between participating agencies to support the legitimate formation of a work group or task force.

69.     During the month of February 2017, Officer Hampshire met with various officers of the SBI twice, including Agent Denny.  On February 12-13, 2017, Officer Hampshire prepared a PowerPoint presentation regarding his investigation which he intended to present to various law enforcement agencies involved in the investigation.

70.     On February 15, 2017, Officer Hampshire learned that Mr. Cooke had taken possession of the mower that had been delivered by the Terrys to DCS and that no law enforcement personnel had viewed or photographed the serial number of the mower. Officer Hampshire traveled to Scott's Tractor to view the mower's serial number, but the mower was not available for him to view.

71.     Defendant Hampshire eventually compiled a report of his investigation, which report provides that on February 16, 2017, Defendant Hampshire returned to Scott's Tractor to photograph the mower's identification number.  However, the report failed to list what the identification number was.  Further, the only photograph of a serial number contained in the report is of the number the Terrys provided by way of photograph.

72.     On March 5, 2017, Defendant Hampshire obtained a search warrant for Plaintiff's home, based on the theft of a vehicle bearing 1TC930MCPGT043684, the number the Terrys reported as stolen to Hampshire and not the number originally

15

reported by the Terrys to DCS and as reported by DCS to be recovered. The warrant also omitted significant information, as well as containing bald misrepresentations. For example, Officer Hampshire and Agent Denny misrepresented Plaintiff's alleged statements in the warrant, stating that Plaintiff had admitted to stealing the mower when Plaintiff in fact did not admit to stealing the mower.

*73.* Ultimately, in June 2017, United States District Court Judge Loretta Biggs suppressed evidence obtained in the execution of the warrant, given Officer Hampshire's misstatements contained in the warrant. The federal charges were thereafter dismissed.

### *Improper Execution of the Warrant and Plaintiff's Improper Arrest*

74. When the warrant was executed in March of 2017, Special Agent Denny and Chief Hassell and Officer Hampshire planned for the GPD to be present, to enter Plaintiff's home, and to search Plaintiff's home for the purpose of gathering items believed to have been issued from GPD to the Plaintiff.

75. At the time the warrant was executed, the GPD did not have jurisdiction over the matter, and Plaintiff did not consent for them to be present on the property. Additionally, the search warrant makes no reference to allowing an employer to enter the home and to seize personal property.

76. On this occasion, officers on scene removed many of Plaintiff's personal possessions, including firearms which were delivered to the SBI. SBI has still failed to return Plaintiff's possessions.

77.    Officer Westmoreland of the BPD typed a warrant for Plaintiff's arrest without performing an investigation.  Further, the warrant involved an act allegedly occurring in Guilford County, with no nexus to Burlington and was therefore outside the jurisdiction of the BPD.  Additionally, the arrest warrant was delivered to the GPD before it was actually executed by the magistrate.  GPD Officer Hinson handcuffed Plaintiff before any magistrate executed a warrant for Plaintiff's arrest.

78.    On March 6, 2017, Officer Hinson turned Plaintiff over to the custody of the Agent Denny and the SBI, and RPD processed Plaintiff for theft of the mower and remanded him into the custody of the BPD where Plaintiff was processed again.  The warrant for Plaintiff's arrest was applied for by Officer Westmoreland with Officer Hampshire listed as witness.  Bail was set at $350,000 for the theft of a lawnmower.

79.    On March 7, 2017, Officer Westmoreland and Agent Denny interviewed GPD Officer D.S. Rakes, who falsely and with no factual basis reported that the investigation culminating in Plaintiff's arrest would make Plaintiff homicidal.  Officer Westmoreland repeated the statement of Officer Rakes to Officer Watkins without investigating whether the statements were in fact true.

80.    Officer Watkins and Agent Denny used the homicidal statement as a basis to charge Plaintiff with federal firearms charges.  Officer Watkins also did not investigate whether the statements were true before using them to charge Plaintiff with additional crimes and before distributing them to multiple law enforcement agencies in the area.

81.    Also, on March 7, 2017, while Plaintiff was in custody, SBI Agent Denny charged Plaintiff with possessing weapons of mass destruction in Guilford County.  After

17

Plaintiff refused to speak with officers regarding pending charges without the presence of his attorney Rick Champion, Plaintiff's bond was increased by $150,000, to a total of $500,000, in efforts to force Plaintiff to speak to them without the presence and advice of counsel and in violation of his constitutional rights.

82. Shortly after his arrest and incarceration, inmates attacked Plaintiff. Rather than placing Plaintiff in protective custody, the Alamance County Sheriff's Office placed Plaintiff in solitary confinement.

83. Plaintiff was released on bail on March 7, 2017. After Agent Denny charged Plaintiff with the GPD "thefts" while he was incarcerated in Caswell County for the federal charges, his bond was increased by an additional $100,000, bringing his total to $600,000. The magistrate was originally going to not assign additional bond, until Officer Westmoreland encouraged the magistrate to add bond.

84. Thereafter, SBI Agent Denny telephoned several officers with the GPD and other state and federal agencies, falsely reporting that Plaintiff made statements and threats to jailors, officers, and magistrates. GPD made these allegations known department wide.

85. The next day, on March 8, 2017, Chief Scott of the GPD directed that an investigation of SBI Agent Denny's statements be undertaken by Sergeant Brown, which investigation refuted Agent Denny's claims. The results of this investigation were disseminated throughout the GPD but were not distributed to the originating agencies by the GPD.

86.    Also on or about March 8, 2017, Defendant Shwochow determined that Plaintiff was illegally in possession of vest, plates, ammunition, and other items allegedly belonging to the GPD, which was not true.

87.    On March 10, 2017, Officer Watkins filed a federal criminal Complaint against Plaintiff.  The federal criminal complaint was based on a firearm seized during the search warrant, which Officer Watkins improperly concluded was not properly registered.  In fact, Officer Watkins ran the wrong serial number during his search, and Plaintiff's firearm appeared to belong to someone else.   The federal complaint also included Officer Rake's false statement that Plaintiff was homicidal, as well as the false allegations of Agent Denny, which the GPD investigation had already concluded were false.

88.    On March 23, 2017, Agent Denny charged Plaintiff with stealing from the GPD, even though the property allegedly stolen was either issued to or belonged to Plaintiff.  Agent Denny made such a charge even though GPD had not provided her an inventory of items so that she could determine ownership.

89.    In fact, because of GPD's inventory system, GPD has no ability to determine what property belonged to GPD and what property belonged to Plaintiff.

90.    Despite making no investigation into ownership, Agent Denny charged Plaintiff for stealing items, which items included ball caps, polo shirts, and bicycles that the GPD issues to officers, including Plaintiff.

91.     Because Plaintiff was terminated by GPD at 8:00 am March 6, 2017, and thereafter immediately arrested, Plaintiff was never afforded the opportunity to return any issued equipment prior to the time his residence was searched.

92.     After Judge Biggs suppressed evidence in the federal proceeding in light of the improper warrant, the federal charges, the Guilford County charges and the Alamance County charges were also dismissed.

93.     Upon information and belief, although the SBI, Sheriff Barnes' office, the GPD, the RPD, and the BPD all worked jointly and in concert in connection with pursuit of charges against Plaintiff, without properly activating the reciprocal agreements which would have authorized them to work together, in violation of North Carolina law.

94.     Further, upon information and belief, throughout the investigation, Agent Denny had doubts about Officer Hampshire's competency as a detective.  Agent Denny voiced these concerns at least once to an officer with the GPD.

### *Plaintiff's Termination by GPD*

95.     Upon information and belief, according to GPD policy, immediate termination of a police office by the Chief of Police is rare.  Indeed, many officers are charged with significant crimes without being immediately terminated.

96.     For example, Officer Byrd was charged with Driving While Impaired in March 2018 and was assigned administrative duty while his criminal case was pending. Additionally, Timothy and Renee Brewer were charged in December 2017 for child abuse and remain employed by GPD.  Retired officer Tom Kroh was charged with domestic violence and continued working at GPD during the pendency of his charges.

Officer Daniel was charged with child pornography in 2014 and was allowed to remain employed with charges pending.

97.     Upon information and belief, Defendant Hinson was motivated to cause Plaintiff's immediate termination based on personal animus Defendant Hinson feels toward Plaintiff.  Defendant Hinson holds Plaintiff in strong dislike and was vengeful towards him Plaintiff's filing several grievances against Defendant Hinson based on Defendant's unequal treatment of officers.

98.     To be vengeful towards Plaintiff, Defendant Hinson successfully lobbied Defendants Scott and Westmoreland to take the unusual step of immediately terminating Plaintiff, which would be hurtful to Plaintiff.

99.     As a direct and proximate result of the conduct of the Defendants as herein described, Plaintiff has been damaged in amounts in excess of $25,000.

100.     As a direct and proximate result of the conduct of the Defendants as herein described, Plaintiff's 12-year-old son from a previous relationship was removed from Plaintiff's custody on March 10, 2017.  While in custody of his maternal grandparents, that son suffered physical and emotional abuse, until his return to Plaintiff in September 2017, all of which damaged Plaintiff.

## FIRST CAUSE OF ACTION
## VIOLATION OF 1983—BURLINGTON,
## WESTMORELAND, AND WATKINS, OFFICIAL CAPACITY

101.     Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 99 of this Complaint with like effect as if fully herein set forth.

102.   By the actions described herein, Defendants Burlington, Westmoreland, and Watkins deprived Plaintiff of his personal liberty, his property without due process in violation of federal law, 42 U.S.C. § 1983, and state law and policy.   Defendants Burlington, Westmoreland, and Watkins falsely arrested Plaintiff and provided false information that resulted in unreasonable, illegal searches and seizures of Plaintiff's person and property.   Acting under color of law and pursuant to an official policy, practice or custom, Westmoreland, Watkins, and Burlington intentionally, knowingly, and recklessly violated plaintiff's civil rights.   Defendants Westmoreland, Watkins, and Burlington deprived Plaintiff of his rights under the Fourth Amendment and the Fifth Amendment.

103.   In the alternative, Burlington, Westmoreland, and Watkins actions were under color of law and done with deliberate indifference to Burlington's policies regarding same.   Upon information and belief, the conduct of Westmoreland and Watkins, as well as other officers employed by Burlington, was conduct in which they routinely engaged, such conduct being persistent, widespread, and permanent, and upon information and belief, was so widespread that Burlington had actual and/or constructive knowledge of the conduct engaged in by its officers which had become in fact the customary practice.

104.   The conduct of Burlington, Westmoreland, and Watkins in depriving Plaintiff of his right to liberty and property and to be free from unlawful searches and seizures without due process was a right clearly established, recognizable by any

22

reasonable law enforcement officer, and Burlington, Westmoreland, and Watkins knowingly violated Plaintiff's rights.

105.   As a direct and proximate result of this deprivation of rights, plaintiff has been damaged in amounts in excess of $25,000.  Specifically, these amounts include, but are not limited to damages caused by Plaintiff being deprived of his belongings and his child.  Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

106.   Defendants Watkins and Burlington directly or indirectly approved and ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Westmoreland.

107.   Defendant Burlington, Watkins, and Westmoreland's actions and omissions, in violation of federal and state law, including 42 U.S.C. § 1983, were undertaken willfully, wantonly, and with reckless disregard for Plaintiff's rights, entitling plaintiff to compensatory and punitive damages in excess of $25,000.

## SECOND CAUSE OF ACTION
## VIOLATION OF 1983—REIDSVILLE, HAMPSHIRE, HASSELL AND COATES IN OFFICIAL CAPACITY

108.   Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 106 of this Complaint with like effect as if fully herein set forth.

109.   By the actions described herein, Defendants Reidsville, Hampshire, Hassell, and Coates deprived Plaintiff of his personal liberty, his property without due

23

process in violation of federal law, 42 U.S.C. § 1983, and state law and policy. Defendants Reidsville, Hampshire, Hassell, and Coates falsely arrested Plaintiff and provided false information that resulted in unreasonable, illegal searches and seizures of his person and his property. Defendants Reidsville and Hampshire illegally searched Plaintiff's garage without a warrant and without permission without provided due process. Acting under color of law and pursuant to an official policy, practice or custom, Reidsville, Hampshire, Hassell, and Coates intentionally, knowingly, and recklessly violated plaintiff's civil rights. Defendants Hampshire, Coates, Hassell, and Reidsville deprived Plaintiff of his rights under the Fourth Amendment and the Fifth Amendment.

110. In the alternative, Reidsville, Hampshire, Hassell, and Coates actions were under color of law and done with deliberate indifference to Reidsville's policies regarding same. Upon information and belief, the conduct of Hampshire, Hassell, and Coates, as well as other officers employed by Reidsville, was conduct in which they routinely engaged, such conduct being persistent, widespread, and permanent, and upon information and belief, was so widespread that Reidsville had actual and/or constructive knowledge of the conduct engaged in by its officers which had become in fact the customary practice.

111. The conduct of Reidsville, Hampshire, Hassell, and Coates in depriving Plaintiff of his right to liberty and property and his right to be free from unreasonable searches and seizures without due process was a right clearly established, recognizable by any reasonable law enforcement officer, and Reidsville, Hampshire, Hassell and Coates knowingly violated Plaintiff's rights.

112. As a direct and proximate result of this deprivation of rights, plaintiff has been damaged in amounts in excess of $25,000. Specifically, these amounts include, but are not limited to damages caused by Plaintiff being deprived of his belongings and his child. Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

113. Defendants Reidsville, Hassell, and Coates directly or indirectly approved and ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Hampshire.

114. Defendants Reidsville, Hampshire, Hassell, and Coates's actions and omissions, in violation of federal and state law, including 42 U.S.C. § 1983, were undertaken willfully, wantonly, and with reckless disregard for Plaintiff's rights, entitling plaintiff to compensatory and punitive damages in excess of $25,000.

**THIRD CAUSE OF ACTION**
**VIOLATION OF 1983—GREENSBORO, SHWOCHOW, HINSON**
**SIGMON, RAINES, BARHAM, WILLIAMSON, ALBERT, AND LOWE**
**IN OFFICIAL CAPACITY**

115. Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 113 of this Complaint with like effect as if fully herein set forth.

116. By the actions described herein, Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe deprived Plaintiff of his personal liberty, his property without due process in violation of federal law, 42 U.S.C. §

25

1983, and state law and policy. Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe falsely arrested Plaintiff and provided false information that resulted in unreasonable, illegal searches and seizures of his person and property. Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe violated Plaintiff's rights by engaging in unreasonable searches and seizures of Plaintiff's person and his property. Acting under color of law and pursuant to an official policy, practice or custom, Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe intentionally, knowingly, and recklessly violated plaintiff's civil rights. Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe deprived Plaintiff of his rights under the Fourth Amendment and the Fifth Amendment.

117.   In the alternative, the actions of Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe, as well as the actions of Defendant Greensboro's agents and employees on March 6, 2017, when those agents entered Plaintiff's home and removed Plaintiff's property, were under color of law and these actions were done with deliberate indifference to Greensboro's policies regarding same. The actions of Defendant Hinson arresting Plaintiff without investigation and with pure animus was a violation of Plaintiff's right to be free from seizure of his person. Upon information and belief, the conduct of Greensboro's agents and employees, including Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe, as well as other officers employed by Greensboro, was conduct in which they routinely engaged, such conduct being persistent, widespread, and permanent, and upon information and

26

belief, was so widespread that Greensboro had actual and/or constructive knowledge of the conduct engaged in by its officers which had become in fact the customary practice.

118.    The conduct of Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe in depriving Plaintiff of his right to liberty and property without due process and to be free of unreasonable search and seizure was a right clearly established, recognizable by any reasonable law enforcement officer, and Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe knowingly violated Plaintiff's rights.

119.    As a direct and proximate result of this deprivation of rights, plaintiff has been damaged in amounts in excess of $25,000.  Specifically, these amounts include, but are not limited to damages caused by Plaintiff being deprived of his belongings and his child.  Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

120.    Defendant Greensboro directly or indirectly approved and ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe and the agents and employees who entered Plaintiff's residence March 6, 2017 and seized Plaintiff's property.

121.    Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe's actions and omissions, in violation of federal and state law, including 42 U.S.C. § 1983, were undertaken willfully, wantonly, and with reckless

27

disregard for Plaintiff's rights, entitling plaintiff to compensatory and punitive damages in excess of $25,000.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 1983—SHERIFF BARNES,**
**STALLS, COOKE, WILKINS, AND BUSKIRK**
**IN THEIR OFFICIAL CAPACITY**

122.    Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 120 of this Complaint with like effect as if fully herein set forth.

123.    By the actions described herein, Defendants Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk deprived Plaintiff of his personal liberty, his property without due process in violation of federal law, 42 U.S.C. § 1983, and state law and policy. Defendants Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk illegally searched plaintiff's house and garage, provided false information that resulted in unreasonable, illegal searches and seizures of his person and property.  Acting under color of law and pursuant to an official policy, practice or custom, Defendants Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk intentionally, knowingly, and recklessly violated plaintiff's civil rights.  Defendants Sheriff Barnes, Stalls, Wilkins, Cooke, and Buskirk deprived Plaintiff of his rights under the Fourth Amendment and the Fifth Amendment.

124.    In the alternative, Defendants Stalls, Cooke, Wilkins, and Buskirk's actions were under color of law and done with deliberate indifference to Sheriff Barnes' policies regarding same.  Upon information and belief, the conduct of Stalls, Cooke, Wilkins, and Buskirk, as well as other officers employed by Sheriff Barnes, was conduct in which they

28

routinely engaged, such conduct being persistent, widespread, and permanent, and upon information and belief, was so widespread that Sheriff Barnes had actual and/or constructive knowledge of the conduct engaged in by his officers which had become in fact the customary practice.

125. The conduct of Defendants Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk in depriving Plaintiff of his right to liberty and property and to be free from unreasonable searches without due process was a right clearly established, recognizable by any reasonable law enforcement officer, and Defendants Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk knowingly violated Plaintiff's rights.

126. As a direct and proximate result of this deprivation of rights, plaintiff has been damaged in amounts in excess of $25,000. Specifically, these amounts include, but are not limited to damages caused by Plaintiff being deprived of his belongings and his child. Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

127. Defendant Sheriff Barnes directly or indirectly approved and ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Stalls, Cooke, Wilkins, and Buskirk.

128. Defendants Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk's actions and omissions, in violation of federal and state law, including 42 U.S.C. § 1983, were undertaken willfully, wantonly, and with reckless disregard for Plaintiff's rights, entitling plaintiff to compensatory and punitive damages in excess of $25,000.

## FIFTH CAUSE OF ACTION
## VIOLATION OF 1983—STALLS BUSKIRK,
## WILKINS AND COOKE INDIVIDUALLY

129.    Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 127 of this Complaint with like effect as if fully herein set forth.

130.    Defendant Stalls, Buskirk, Wilkins, and Cooke illegally entered Plaintiff's home and searched his garage without a warrant in violation of his Fourth Amendment rights.  These Defendants further relayed information obtained in their illegal searches to other Defendants.

131.    No reasonable officer would have believed such entry and search were lawful.

132.    Upon information and belief, the actions of Stalls, Buskirk, Wilkins, and Cooke as herein described were malicious, corrupt, and outside the scope of their duties, and undertaken in knowing violation of the law.

133.    Alternatively, the actions of Stalls, Buskirk, Wilkins, and Cooke as herein described were plainly incompetent and violative of Sheriff Barnes' procedures and practices.

134.    As a direct and proximate result of this deprivation of rights under the Fourth Amendment and the Fifth Amendment, plaintiff has been damaged in amounts in excess of $25,000.  Specifically, these amounts include, but are not limited to damages caused by Plaintiff being deprived of his belongings and his child.  Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as

30

because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

## SIXTH CAUSE OF ACTION
## VIOLATION OF 1983—HAMPSHIRE AND COATES INDIVIDUALLY

135.   Plaintiff incorporates by reference each and all of the allegations contained in paragraphs one through 133 of this Complaint with like effect as if fully herein set forth.

136.   Defendants Hampshire and Coates acted outside their territorial jurisdiction, informally deciding to form a task force and/or engaging in mutual aid, without following the proper policies and statutory requirements.

137.   Chapter 15A of the North Carolina General Statutes requires a charging officer to have personal knowledge of the facts presented to a magistrate.  As such, upon information and belief, the statute and RPD's policies require a charging officer to be personally familiar with the material presented to the magistrate.

138.   Upon information and belief, RPD policies and the statutes would require an officer to at a minimum examine the serial number of allegedly stolen equipment to positively identify it before deciding to charge any individual with a criminal offense.

139.   Upon information and belief, BPD policies and the statutes would require an officer to at a minimum examine the serial number of allegedly stolen equipment to positively identify it before changing the number in the investigative file.

31

140.    Upon information and belief, BPD policies and the statutes would require an officer to at a minimum to make truthful statements when requesting a warrant from a magistrate.

141.    Upon information and belief, BPD policies and the statutes would require an officer to at a minimum to refrain from seizing a citizen's private property and giving it to a third party without notice to Plaintiff or through proper legal process.

142.    Upon information and belief, BPD policies and the statutes would require a supervising officer to at a minimum examine the investigative file and corroborate the work of his or her junior officer before approving a request for a warrant.

143.    Defendant Hampshire, as approved by Defendant Coates improperly included in application for state charges the misrepresentation that Plaintiff had admitted to the theft of the mower.

144.    No reasonable officer would have believed such conduct as herein described was lawful.

145.    Upon information and belief, the actions of Hampshire and Coates as herein described were malicious, corrupt, and outside the scope of their duties, and undertaken in knowing violation of the law.

146.    Alternatively, the actions of Hampshire and Coates as herein described were plainly incompetent and violative of Burlington procedures and practices.

147.    As a direct and proximate result of this deprivation of rights under the Fourth Amendment and under the Fifth Amendment, plaintiff has been damaged in amounts in excess of $25,000.  Specifically, these amounts include, but are not limited to

damages caused by Plaintiff being deprived of his belongings and his child. Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF 1983—WESTMORELAND**
**AND WATKINS INDIVIDUALLY**

148.    Plaintiff incorporates by reference each and all of the allegations contained in paragraphs one through 146 of this Complaint with like effect as if fully herein set forth.

149.    Statutorily, Defendants Westmoreland and Watkins were only authorized to investigate crimes committed in Burlington, unless proper statutorily prescribed methods are followed to allow interagency cooperation.

150.    The crimes for which Plaintiff was charged did not occur in Burlington.

151.    Defendants Watkins and Westmoreland acted outside their territorial jurisdiction, informally deciding to form a task force and/or engaging in mutual aid, without following the proper policies and statutory requirements. As such, statutorily, Defendants Watkins and Westmoreland had no authority to investigate crimes, or make criminal charges against Plaintiff, all of which alleged crimes originated and/or culminate in other geographical jurisdictions.

152.    Chapter 15A of the North Carolina General Statutes requires a charging officer to have personal knowledge of the facts presented to a magistrate. As such, upon

33

information and belief, the statute and BPD's policies require a charging officer to be personally familiar with the material presented to the magistrate.

153.    Upon information and belief, BPD policies and the statutes would require an officer to at a minimum read the investigative reports of other agencies and perform his or her own investigation before deciding to charge any individual with a criminal offense.

154.    Defendants Westmoreland and Watkins failed to follow procedures in failing to review Durham County's report, Reidsville's report, and the SBI report.

155.    Further, in reckless disregard for BPD's policies, Defendant Watkins failed to investigate Agent Denny's false claims that Plaintiff was homicidal following Plaintiff's arrest.  Instead, Defendant Watkins unreasonably included such allegations without further verification or investigation into Defendant Watkins application for a federal weapons charge against Plaintiff.

156.    Moreover, Plaintiff's mother Ms. Holder, also an officer with the GPD, provided to Defendant Watkins the email disseminated throughout the GPD that its investigation revealed Plaintiff was not homicidal.  Defendant Watkins included the statement in the application.

157.    Defendant Watkins improperly misrecorded the serial number on a firearm seized in the illegal search of Plaintiff's home, which recording resulted in his conclusion that the weapon was registered to someone other than Plaintiff.  Defendant Watkins then included this erroneous information in the application for federal charges against Plaintiff.

158. Defendant Watkins improperly included in application for federal charges the allegation that Plaintiff had items at his home that had been stolen from GPD. However, these items were obviously issued to Plaintiff, at the time he was an officer for the GPD.

159. As a result of Defendant Watkins' actions, Plaintiff was falsely painted to the federal judge that issued the charges as a picture of a homicidal, gun toting, thief, with access to cash and weapons.

160. No reasonable officer would have believed such an arrest was lawful.

161. Upon information and belief, the actions of Westmoreland and Watkins has herein described were malicious, corrupt, and outside the scope of their duties, and undertaken in knowing violation of the law.

162. Alternatively, the actions of Westmoreland and Watkins as herein described were plainly incompetent and violative of Burlington procedures and practices.

163. As a direct and proximate result of this deprivation of rights under the Fourth Amendment and the Fifth Amendment, plaintiff has been damaged in amounts in excess of $25,000. Specifically, these amounts include, but are not limited to damages caused by Plaintiff being deprived of his belongings and his child. Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

## NINTH CAUSE OF ACTION
## VIOLATION OF 1983— GREENSBORO, SHWOCHOW, HINSON SIGMON, RAINES, BARHAM, WILLIAMSON, ALBERT, AND LOWE INDIVIDUALLY

164.    Plaintiff incorporates by reference each and all of the allegations contained in paragraphs one through 162 of this Complaint with like effect as if fully herein set forth.

165.    Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe illegally entered onto Plaintiff's property and without permission or a warrant seized Plaintiff's possessions and removed them from his home.

166.    Defendant Hinson without investigation arrested Plaintiff based on personal animus Defendant Hinson held towards Plaintiff.

167.    No reasonable officer would have entered into Plaintiff's property and seized his possessions without a warrant and without permission.

168.    No reasonable officer would have arrested Plaintiff simply because that officer did not like Plaintiff.

169.    Upon information and belief, the actions of Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe as herein described were malicious, corrupt, and outside the scope of their duties, and undertaken in knowing violation of the law.

170.    Alternatively, the actions of Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Hinson, Albert, and Lowe as herein described were plainly incompetent and violative of Greensboro's procedures and practices.

171.   As a direct and proximate result of this deprivation of rights under the Fourth Amendment and the Fifth Amendment, plaintiff has been damaged in amounts in excess of $25,000.  Specifically, these amounts include, but are not limited to damages caused by Plaintiff being deprived of his belongings and his child.  Plaintiff has expended monies to regain custody of his child, to defend himself from false charges, as well as because of the loss of health care coverage, causing him to incur expenses caused by the birth of his child.

**TENTH CAUSE OF ACTION**
**MALICIOUS PROSECUTION-WATKINS,**
**WESTMORELAND, HAMPSHIRE, STALLS, COOKE,**
**SHWOCHOW, WILLIAMSON, BUSKIRK, BURLINGTON,**
**REIDSVILLE, SHERIFF BARNES, AND GREENSBORO**

172.   Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 170 of this Complaint with like effect as if fully herein set forth.

173.   Defendants Hampshire and Watkins falsified statements in warrants, suggesting that Plaintiff had admitted guilt in the theft of the lawnmower when in fact he had not.  Defendant Hampshire and Watkins also falsely reported and repeated untrue statements regarding Plaintiff's mental health when she did not investigate such statements and after she had been informed that by GPD that the statements were false.

174.   Defendants Watkins, Westmoreland, Hampshire, Stalls, Cooke, Shwochow, Williamson, and Buskirk instituted or caused criminal proceedings to be instituted against Plaintiff.

175.   In instituting the criminal proceedings against Plaintiff, Defendants Watkins, Westmoreland, Hampshire, Stalls, Cooke, Shwochow, Williamson, and Buskirk committed a wrongful act intentionally and without excuse or just cause, or proceeded recklessly in disregard of Plaintiff's rights, or to accomplish a collateral purpose of causing injury to Plaintiff.

176.   The criminal proceedings instituted by Defendants Watkins, Westmoreland, Hampshire, Stalls, Cooke, Shwochow, Williamson, and Buskirk ended in Plaintiff's favor.

177.   Upon information and belief, at all times herein relevant Defendants Watkins and Westmoreland were agents and employees of Defendant Burlington, acting within the course and scope of said agency.

178.   Upon information and belief, at all times herein relevant Defendants Stalls, Cooke, and Buskirk were agents and employees of Defendant Sheriff Barnes, acting within the course and scope of said agency.

179.   Upon information and belief, at all times herein relevant Defendant Hampshire was an agent and employee of Defendant Reidsville, acting within the course and scope of said agency.

180.   Upon information and belief, at all times herein relevant Defendants Shwochow and Williamson were agents and employees of Defendant Greensboro, acting within the course and scope of said agency.

181.   As a direct and proximate result of Defendants Watkins, Westmoreland, Hampshire, Stalls, Cooke, Shwochow, Williamson, and Buskirk's actions in instituting

the criminal proceedings against Plaintiff, Plaintiff has sustained financial and emotion injury, damaging him in amounts in excess of $25,000.

## THIRTEENTH CAUSE OF ACTION
## TRESPASS—SHERIFF BARNES, STALLS, WILKINS, AND COOKE

182.    The allegations contained in Paragraphs one through 180 of this Complaint are incorporated by reference as if herein fully repeated.

183.    Upon information and belief, at all times herein relevant, Defendant Stalls, Wilkins, and Cooke were agents and employees of Defendant Sheriff Barnes, on and about the business of Sheriff Barnes and acting in the course and scope of said agency and employment.

184.    Defendants Wilkins, Stalls, and Cooke were not invited into Plaintiff's residence and/or the garage of that residence.

185.    On separate occasions, Defendants Wilkins, Stalls, and Cooke entered Plaintiff's residence and/or garage without authorization.

186.    At all times relevant to the matters herein, Plaintiff was in lawful possession of his residence and garage.

187.    As set forth in more detail above, Defendants Wilkins, Cooke, and Stalls voluntarily entered and remained present on Plaintiff's property without authorization.

188.    Defendants Wilkins, Cooke, and Stalls' trespass on Plaintiff's property is imputable to Defendant Sheriff Barnes as the trespass was done during the course and scope of agency and done in furtherance of Sheriff Barnes' business.

189.    As a direct and proximate cause of the Defendants Wilkins, Cooke, and Stalls' trespass on Plaintiff's property, as set forth in more detail herein, Plaintiff has suffered and will continue to suffer damages in excess of $25,000.00.

### FOURTEENTH CAUSE OF ACTION
### TRESPASS—GREENSBORO, WATKINS, WESTMORELAND, HAMPSHIRE, STALLS, COOKE, SHWOCHOW, ALBERT, WILLIAMSON, AND BUSKIRK

190.    The allegations contained in Paragraphs one through 188 of this Complaint are incorporated by reference as if herein fully repeated.

191.    On or about March 6, 2017, Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe entered Plaintiff's residence and/or garage without authorization.

192.    At all times herein relevant, Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe were acting as the agents and employees of Defendant Greensboro, acting in the course and scope of said employment.

193.    When Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe entered Plaintiff's residence on or about March 6, 2017, they had not been invited by Plaintiff to so enter.

194.    At all times relevant to the matters herein, Plaintiff was in lawful possession of his residence and garage.

195.    As set forth in more detail above, Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe voluntarily entered and remained present on Plaintiff's property without authorization.

40

196.   The trespass of Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe on Plaintiff's property is imputable to Defendant Greensboro as the trespass was done during the course and scope of agency and done in furtherance of Greensboro's business.

197.   As a direct and proximate cause of the Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe's trespass on Plaintiff's property, as set forth in more detail herein, Plaintiff has suffered and will continue to suffer damages in excess of $25,000.00.

## FIFTEENTH CAUSE OF ACTION
## TRESPASS—HAMPSHIRE AND REIDSVILLE

198.   The allegations contained in Paragraphs one through 196 of this Complaint are incorporated by reference as if herein fully repeated.

199.   In November 2016, Defendant Hampshire entered Plaintiff's residence and/or garage without authorization.

200.   At all times herein relevant, Defendant Hampshire was acting as the agent and employee of Defendant Reidsville, acting in the course and scope of said employment.

201.   When Defendant Hampshire entered Plaintiff's residence in November 2016, Defendant Hampshire had not been invited by Plaintiff to so enter.

202.   At all times relevant to the matters herein, Plaintiff was in lawful possession of his residence and garage.

203. As set forth in more detail above, Defendant Hampshire voluntarily entered and remained present on Plaintiff's property without authorization.

204. The trespass of Defendant Hampshire on Plaintiff's property is imputable to Defendant Reidsville as the trespass was done during the course and scope of agency and done in furtherance of Reidsville's business.

205. As a direct and proximate cause of the Defendant Hampshire's trespass on Plaintiff's property, as set forth in more detail herein, Plaintiff has suffered and will continue to suffer damages in excess of $25,000.00.

## SIXTEENTH CAUSE OF ACTION
## COBRA—GREENSBORO

206. Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 204 of this Complaint with like effect as if fully herein set forth.

207. While employed by Defendant Greensboro, Plaintiff was a beneficiary under an employee welfare benefit plan sponsored by Defendant Greensboro. Plaintiff was entitled to receive group health, vision, dental and life insurance as a beneficiary of the plan. Plaintiff's dependents were entitled to receive group health insurance under the plan as well.

208. Defendant Greensboro terminated Plaintiff's employment March 6, 2017. At that time and within 30 days thereafter, Defendant Greensboro failed to provide Plaintiff notice of his rights to continue group health coverage and to provide him with

42

how much he would need to pay, to whom to pay, and to where to direct payment to continue that group health coverage for himself and his family.

209.    As a result of the failure to provide said information, Plaintiff's health care coverage lapsed.

210.    At the time Defendant Greensboro terminated Plaintiff, Plaintiff's wife was pregnant and had been actively utilizing that group health coverage for prenatal care. Additionally, Plaintiff and his family had been utilizing that group health coverage.

211.    Plaintiff was unable to obtain and pay for alternate health coverage.  As a result, Plaintiff and his family were uninsured for health care.

212.    Plaintiff incurred significant expenses paying for health care himself, including, but not limited to, the expenses associated with the prenatal care and eventual birth of his child.

213.    Defendant Greensboro failed to provide prompt disclosure of plan information to Plaintiff.

214.    Defendant Greensboro breached its fiduciary duty it owes to Plaintiff by failing to provide Plaintiff information about continuing group health care coverage, despite repeated requests that it do so.

215.    Defendant Greensboro's failure to give Plaintiff the requisite notices under 29 U.S.C. 1166 ("COBRA") and denying his right to continue coverage under COBRA was a violation of COBRA.

216.    Plaintiff was entitled to receive the notices under COBRA within thirty days of when he requested them and Defendant Greensboro failed to give Plaintiff the requested information until March 13, 2018.

217.    Plaintiff is entitled to recover statutory damages from Defendant Greensboro, calculated at the rate of $100 per day through March 13, 2018.

<u>SEVENTEENTH CAUSE OF ACTION</u>
<u>TAKING—GREENSBORO</u>

218.    Plaintiff incorporates by reference each and all of the allegations contained in paragraphs on through 216 of this Complaint with like effect as if fully herein set forth.

219.    Before March 6, 2017, Plaintiff had purchased firearms, ammunition, backpacks, ballistic vests, and other items.

220.    Before March 6, 2017, Plaintiff had been issued by Greensboro gear, which included hats, shirts, uniforms, etc.

221.    Before March 6, 2017, Plaintiff had been gifted by Greensboro with ammunition.  Specifically, Greensboro from time to time would issue ammunition to Plaintiff for training and after training was complete, refused the Plaintiff's attempts to return unused ammunition.

222.    On or about March 6, 2017, Defendant Greensboro's officer and agents, including Defendants Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe acting within the course and scope of such agency and employment, appeared at Plaintiff's residence at a time Sheriff Barnes and Defendant Hampshire were executing the search warrant of Plaintiff's home.

44

223.   Without permission, Defendant Greensboro's officers and agents seized Plaintiff's firearms, ammunition, vests, uniforms, shirts, and other items that belong to Plaintiff.

224.   At the time of filing this Complaint, Defendant Greensboro has failed and refused to return to Plaintiff all of his property.

225.   Defendant Greensboro engaged in the seizure of Plaintiff's property without notifying or otherwise informing the Plaintiff.

226.   The Defendant Greensboro's above-mentioned actions constitute a denial of property rights without just compensation within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution.

227.   Specifically, the Defendant Greensboro's actions denied a valuable property right to Plaintiff, to which he has a legal right.

228.   As a direct and proximate result of Defendant Greensboro's actions as herein described, Plaintiff has been damaged in an amount in excess of $25,000.

## EIGHTEENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT
## HINSON, WESTMORELAND, AND SCOTT

229.   Plaintiff incorporates by reference each and all of the averments contained in paragraphs one through 227 of this Complaint with like effect as if fully herein set forth.

230.   Plaintiff and Defendant Greensboro had a contract of employment.

45

231. At all relevant times, Defendants Hinson, Westmoreland, and Scott knew of the contract of employment.

232. Despite such knowledge, Defendants Hinson, Westmoreland, and Scott intentionally and without justification, and not in a legitimate exercise of their own rights or the rights of Defendant Greensboro, have interfered with the employment contract and induced Defendant Greensboro to terminate that contract of employment solely because of the animus of those Defendants directed toward Plaintiff and not in the legitimate exercise of the business of the Defendant Greensboro.

233. Defendants Hinson, Westmoreland, and Scott did not act with legitimate business interest, but instead sought to inflict injury upon Plaintiff through the termination of Plaintiff, without the regular process provided to employees accused of crimes.

234. As a direct and proximate result of the conduct of Defendants Hinson, Scott, and Westmoreland, Plaintiff has suffered damages in excess of $25,000.

## NINETEENTH CAUSE OF ACTION, IN THE ALTERNATIVE VIOLATION OF THE NORTH CAROLINA CONSTITUTION ALL DEFENDANTS

235. Plaintiff incorporates by reference each and all of the allegations contained in paragraphs one through 233 of this Complaint with like effect as if fully herein set forth.

236. The actions of the Defendants as herein described violated Plaintiff's rights under the North Carolina Constitution (the "NC Constitution").

237.    Defendants Burlington, Westmoreland, Watkins, Reidsville, Hampshire, Coates, Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk violated Plaintiff's rights under Article 1, Section 19 of the NC Constitution in that they deprived him of his liberty and deprived him of his property.  Specifically, Defendants Burlington, Westmoreland, Watkins, Reidsville, Hampshire, Coates, and Hinson arrested Plaintiff without cause and supported by false statements and information they made.  Further, Defendant Hinson took Plaintiff into custody without a valid arrest warrant having been issued.  Defendants Burlington, Westmoreland, Watkins, Reidsville, Hampshire, Coates caused search warrants to be issued based on false statements and false information that resulted in property being seized from Plaintiff's home, some of which has not been returned.  Indeed, Defendants Greensboro, Shwochow, Sigmon, Raines, Barham, Williamson, Albert, and Lowe entered onto Plaintiff's property without permission and seized Plaintiff's property and has failed to return it.  These illegal and unconstitutional actions were predicated on the actions of Defendants Sheriff Barnes, Stalls, Cooke, Wilkins, and Buskirk who entered onto Plaintiff's property on more than one occasion, without permission, making illegal searches thereof.

238.    Defendants Greensboro, Hinson, Westmoreland, and Scott violated Plaintiff's rights under Article 1, Section 19 of the NC Constitution in that they deprived him of the equal protection of the laws.  Specifically, these Defendants failed to follow procedures and allow Plaintiff's employment to continue at GPD until such time as the charges against him were investigated.  Although GPD allowed other officers to remain employed while charges were investigated, including violent crimes as above described,

47

these Defendants violated Plaintiff's rights under the NC Constitution by failing to provide him the equal protection of the laws while his charges were being investigated.

239.    Defendants Greensboro and Hinson violated Plaintiff's rights under Article 1, Section 20 of the NC Constitution in that they seized his person, depriving him of liberty, in the absence of the issuance of a proper warrant.

240.    Defendants Reidsville, Westmoreland, and Hampshire violated Plaintiff's rights under Article 1, Section 27 of the NC Constitution in that they required excessive bail to be posted by Plaintiff.  As above described, Plaintiff ultimately posted a $600,000 bond for charges stemming from the investigation of an alleged lawnmower theft.

241.    As a direct and proximate result of Defendants' actions herein described, Plaintiff was deprived of his liberty, deprived of his property, and forced to post excessive bail, as herein described, all causing damages to him in amounts in excess of $25,000.

242.    As a direct and proximate result of Defendants' actions herein described, Plaintiff lost his job, his health care coverage, and other damages in amounts in excess of $25,000.

This the 19th day of November, 2018.

/s/ Rachel S. Decker
Kenneth R. Keller (State Bar No. 6238)
Rachel S. Decker (N.C. State Bar No. 22020)
CARRUTHERS & ROTH, P.A.
*Attorney for Plaintiff*
235 N. Edgeworth Street (27401)
P.O. Box 540
Greensboro, NC 27402
Telephone: (336) 478-1161
Facsimile: (336) 478-1159
Email: rsd@crlaw.com