UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:18-cv-00969-TDS-JEP

| | |
|---|---|
| WILLIAM Z. WHITE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE CITY OF GREENSBORO, et al., )<br>)<br>Defendants. ) | **DEFENDANT STALLS'**<br>**FINAL PRE-TRIAL**<br>**DISCLOSURES** |

## PREAMBLE

**COMES NOW** Defendant Stalls, in his individual capacity, through Counsel, pursuant to the Court's Trial Calendaring Notice (DE 172), Fed. R. Civ. P. 26(a)(3), and Local Rule 40.1(c), and submits his Final Pre-trial Disclosures as follows:

**A.** **Lay Witnesses the Defendant Stalls Expects to Call at Trial**

1. **Sergeant James M. Stalls**, Defendant.

2. **Brittany Stalls**, Defendant's wife – previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

**B.** **Witness' Testimony that Will be Presented at Trial via Deposition**

None. Not applicable.

**C.** **Expert Witnesses the Defendant Stalls Expects to Present at Trial**

None. Not applicable.

**D.** **Exhibits the Defendant Stalls Expects to Present at Trial**

1. September 3, 2016 text messages b/t Plntf and Stalls. (DE 128-3, pp. 6 – 8).

1

### E. Lay Witnesses Defendant Stalls May Call at Trial – Should the Need Arise[1]

1. **Former Sheriff BJ Barnes** -- previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

2. **Deputy (Lieutenant) Elizabeth Cox (formerly Buskirk)** -- previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

3. **Deputy (Lieutenant) David Cook** -- previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

4. **Deputy Homer F. Wilkins** -- previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

5. **Major George Moore** -- previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

6. **Deputy (Sergeant) Amanda Fields** -- previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

7. **Deputy William Case (now retired)** -- previously identified in Defendant Stalls' Initial Disclosures served on January 15, 2020.

---

[1] Defendant Stalls' position is that the only witnesses and evidence relevant to the remaining trespass claim against him include Plaintiff, Christina White, and those described in Sections A and D above, to wit: Defendant Stalls, Brittany Stalls, and the text messages exchanged between Stalls and Plaintiff on September 3, 2016. Should, however, Plaintiff persuade the Court to allow him to present witnesses and evidence beyond that limited scope (whether it be on the issues of liability or damages), then and in that event, Defendant Stalls reserves the right to present the witnesses, deposition testimony, and exhibits identified in Sections E – G of these Final Pre-trial Disclosures.

8. **David and Dennie Terry** – previously identified in Defendant Stalls' Initial Disclosures and First Supplemental Disclosures served on January 15, 2020 and September 28, 2020 respectively.

9. **Linwood Hampshire --** previously identified in Defendant Stalls' First Supplemental Disclosures served on September 28, 2020.

10. **Mrs. Christina White (wife of the Plaintiff)** -- previously identified in Defendant Stalls' First Supplemental Disclosures served on September 28, 2020.

11. **Special Agent Destiny Denny** -- previously identified in Defendant Stalls' First Supplemental Disclosures served on September 28, 2020.

12. **Special Agent Kelly Cummings** -- previously identified in Defendant Stalls' First Supplemental Disclosures served on September 28, 2020.

13. **Deputy J. Lowe** -- previously identified in Defendant Stalls' First Supplemental Disclosures served on September 28, 2020.

14. **Sergeant J. Eaton** -- previously identified in Defendant Stalls' First Supplemental Disclosures served on September 28, 2020.

15. **Jeffrey Strickland** -- previously identified in Defendant Stalls' First Supplemental Disclosures served on September 28, 2020.

17. **Detective Cody Westmoreland --** 267 W Front St, Burlington, NC 27215; 336-229-3500 -- not previously identified in Defendant Stalls' prior Disclosures, but this witness was one of the original defendants in this case and he was deposed by all parties in this action on September 23, 2020. It is anticipated Detective Westmoreland will testify

that in connection with his investigation into Jeffrey Strickland and Plaintiff concerning stolen lawn and recreational power equipment, that Westmoreland never communicated with any GCSO employees. (West. Dep., p 49, l. 16 - p. 50, l. 3). He will testify that before his deposition in September 2020, he had never heard of GCSO Defendants Stalls or Wilkins. (Id. p. 86, l. 2 – p. 87, l. 7). He never knew Stalls had taken a photo of the mower's serial number. (*Id*., p 48, l. 3 - p. 49, l. 7). As for the "Breaking Bad" task force, Westmoreland never heard of it. (*Id*., p. 52, ll. 6 – 11). He also denied hearing Plaintiff's name mentioned during the PIG meetings he attended. (*Id*., p. 53, l. 17 - p. 54, l. 11).

18. **GPD Sergeant James Schwochow** -- not previously identified in Defendant Stalls' prior Disclosures but this witness is a Defendants in this case and he was deposed by all parties in this action on September 28, 2020. He can be contacted via his Attorney, Patrick Kane. It is anticipated this witness will testify that before the search on March 6, 2017, the Sergeant had no knowledge of the investigation involving Plaintiff. (Shwochow Dep., p. 25, ll. 2-25). On that day, his supervisor sent him to Plaintiff's home and assist in cataloging the GPD property found there. (*Id*., p. 31, l. 21 – p. 37, l. 1). Shwochow does not know GCSO Defendants Stalls or Wilkins. (*Id*., p. 20, ll. 4-14).

19. **Durham Sheriff's Office Detective Peter Lilje:** 510 South Dillard Street, Durham, NC 27701; (919) 560-0897. Not previously identified in Defendants Stalls' Disclosures, but Detective Lilje's involvement in the early days of the criminal investigation at the request of Mr. and Mrs. Terry is well known to all parties.

4

**20.     Reidsville Police Lieutenant Shannon Coates:** 220 W Morehead St, Reidsville, NC 27320; (336) 349-1010; Not previously identified in Defendants Stalls' Disclosures, but Lieutenant Coates was one of the original Defendants in this action and his involvement in the criminal investigation concerning Plaintiff is known to all parties.

**21.     Keith Carmack and Dylan Kiger** -- Owners of Sedgefield Power Equipment (f/k/a Sedgefield Lawn & Garden), 5111 Mackay Rd, Jamestown, NC 27282; 336-854-5511.  These witnesses were not previously identified in Defendant Stalls' Disclosures, but they are the owners of the location on which Plaintiff claimed to have purchased the subject mower off the back of a trailer from a "white male from up north". It is anticipated that these witnesses will testify that they never observed an individual selling mowers in their parking lot and that they never would have allowed a competitor to sell mowers in their own parking lot.

**22.     Any witness listed by any other party.**

**F.  <u>Exhibits the Defendant Stalls May Present at Trial – Should the Need Arise</u>**

2.     Plaintiff's initial Complaint, First Amended Complaint, and Second Amended Complaint.  (DE 1, 21, and 81).

3.     Plaintiff's Answers to Defendant Stalls' First Set of Interrogatories.

4.     Street view photograph of Sedgefield Lawn & Garden (Dep. Ex. No. 5).

5.     Aerial photograph of Sedgefield Lawn & Garden (Dep.Ex. No. 4).

6.     Photograph taken by Defendant Stalls on <u>September 3, 2016</u> of mower's factory-installed serial number tag.  (DE 128-3 at p. 5).

7. Text messages exchanged between the Plaintiff and Defendant Stalls on September 19, 2016. (DE 128-3 at p. 8).

8. GCSO Command Summary Report for September 25, 2016 – October 1, 2016. (DE 128-7 at pp. 11 - 12).

9. Photograph of Plaintiff's garage with door open. (DE 128-7 at p. 13).

10. Craigslist advertisement for subject mower. (DE 128-8 at p. 13).

11. Text messages exchanged from September 19, 2016 and September 24, 2016 between the Plaintiff and Mr. and Mrs. Terry (who purchased the mower from Plaintiff). (DE 128-8 at pp. 14 - 27).

12. Bill of Sale provided by Plaintiff to Mr. and Mrs. Terry. (DE 128-8 at p. 28).

13. Photograph taken by Mr. Terry of hidden serial number on the mower. (DE 128-8 at p. 29).

14. Video of recorded interview of Plaintiff that was conducted on November 9, 2016 by NCSBI Agent Denny and Reidsville PD Detective Hampshire. (NC SBI Investigative File – Computer Disc No. 4).

15. Search Warrant for Plaintiff's residence on March 6, 2017. (NCSBI Investigative File – Computer Disc No. 1, Item 10; Reidsville Responses to Plaintiff's RPD's at pp. 0152 to 0210).

16. Durham County incident/investigative reports and supplements thereto. (Reidsville Responses to Plaintiff's RPD's at pp. 0340 to 0343).

17. Reidsville PD incident/investigative reports and supplements thereto, (Plaintiff's Responses to Burlington's RPD's at pp. 000005 to 00038).

18. GPD incident/investigative reports and supplements thereto. (Plaintiff's Responses to Burlington's RPD's at pp. 001262 to 001290).

19. NCSBI Report on results of search on Plaintiff's residence on March 6, 2017. (NCSBI Investigative File – Computer Disc No. 1, Item 18).

20. NCSBI photograph taken on March 6, 2017 of the $60,000.00 found taped under Plaintiff's bathroom sink and the note written by Plaintiff that accompanied the cash. (NCSBI Investigative File – Computer Disc No. 3).

21. NCSBI photographs taken on March 6, 2017 of the stolen Gator recovered during search of Plaintiff's residence. (NCSBI Investigative File -- Disc No. 3).

22. NCSBI photographs taken on March 6, 2017 of the trailer with obliterated serial number that was found in Plaintiff's possession during search of his residence. (NCSBI Investigative File -- Disc No. 3).

23. NCSBI photograph taken on March 6, 2017 of the illegal short-barreled weapon(s) recovered during search of Plaintiff's residence. (NCSBI Investigative File -- Disc No. 3).

24. NCSBI photographs taken on March 6, 2017 of the illegal firearm suppressors possessed and/or manufactured by Plaintiff. (NC SBI Investigative File – Computer Disc Nos. 3, 7, and 9).

25. Video of recorded interview of Plaintiff that was conducted by NCSBI Agents following his arrest on March 6, 2017, 2016. (NC SBI Investigative File – Computer Disc No. 6).

26. Transcript of recorded GCSO Internal Affairs interview with Plaintiff and his wife on September 6, 2017. (DE 128-12 at pp. 6 – 20). In particular, the following excerpts: On p. 12, the Plaintiff acknowledges that it would not be inappropriate for Deputy Stalls to accompany his wife to the Plaintiff's home while she fed the dogs.

On p. 13, Plaintiff and his Wife state that the purported confrontation between Plaintiff and Stalls wherein Plaintiff testified that he verbally banned Stalls from Plaintiff's home, occurred at the State Fair in October 2016 which was after--not before--the Labor Day holiday in September 2016. The GCSO Defendants do not concede that this conversation took place, but if it did, the foregoing portion of the Plaintiff's statement to the GCSO Internal Affairs investigator make it clear that this conversation was at least a month after Stalls entered the Plaintiff's garage on September 3, 2016. Upon information and belief, the NC State Fair took place between October 13 and October 23, 2016

On p. 15, the Whites acknowledge that the dog food and "everything dog-related" was located in their garage where the mower was parked. This openly contradicts the Plaintiff's testimony that there was no need for Mr. or Mrs. Stalls to enter Plaintiff's garage to feed the dog during the Labor Day Holiday 2016.

27. Plaintiff's Arrest Warrants which include the following:

a. Alamance County Arrest Warrant issued on <u>March 6, 2017</u>;

b. Guilford County Arrest Warrant issued <u>March 7, 2017</u> (White RRPD 1393);

c. Guilford County Arrest Warrant issued <u>March 23, 2017</u> (White RRPD 1396);

d. Alamance County Arrest Warrant issued <u>March 23, 2017</u>;

e. USDC-MDNC Arrest Warrant issued <u>March 10, 2017</u>.

28. Jeffrey Strickland's Certified Criminal Record and Court Documents related to his Plea. (DE 128-15 at pp. 1 – 34).

29. Any exhibits listed by any other party.

### G. <u>Witness' Testimony Presented at Trial via Deposition—Should the Need Arise</u>

**1. <u>Brittany Stalls</u>:** The following parts of her deposition may be offered at trial:

a. Mrs. Stalls confirmed the request to care for the dogs over Labor Day 2016 came from her sister Christina (Plaintiff's wife) who had made similar requests before <u>September 2016</u>; and that Plaintiff's wife knew Deputy Stalls previously accompanied Brittany when caring for the dogs and Christina never objected. (B. Stalls Dep., p. 15, l. 22 – p. 18, l. 22).

b. Plaintiff's wife gave Mrs. Stalls the garage key and house's alarm code. (*Id.*).

**2. <u>Christina White</u>:** The following parts of her deposition may be offered at trial:

a. As for Labor Day 2016, Christina White agreed it was ***"very likely"*** during one of the Sunday dinners where she asked Stalls' wife to care for the dogs during the upcoming holiday. (C. White Dep., p. 81, ll. 6-14).

b. Mrs. White agreed that before September 2016, she frequently asked Stalls' wife to care for the dogs. (*Id.*, p. 78, l. 5 – p. 80, l. 16). This involved letting the dogs out of the garage in the morning, putting them back at night, and providing food and water. (*Id.*) The garage where the dogs stayed and where their food was stored, was where the subject mower was parked. (*Id.*).

c. Mrs. White claimed Deputy Stalls played too roughly with the dogs and, as such, she had told Stalls' wife (**but not Stalls**) that she would prefer Stalls' wife come alone when caring for the dogs. (*Id.*, p. 82, l. 13 – p. 83, l. 9; p. 85, ll. 5-12).

d. Prior to September 3, 2016, Christina White never told Matt Stalls that he was not to enter Plaintiff's house to provide care for the dogs. Christina White confirmed that the Plaintiff did not prohibit Stalls from entering the house until the State Fair in October 2016. (C. White Dep., p. 84, l. 25 to p. 86, l. 22)

e. Also relevant is Mrs. White's description of the "acquisition" of the mower from Jeffrey Strickland (C. White Dep., p. 86, l. 3 to p. 90, l. 8).

**3. Linwood Hampshire:** The following parts of his deposition may be offered:

a. Mr. Hampshire was Reidsville P.D.'s lead investigator into the lawnmower theft and its subsequent sale to the Terrys. During his criminal investigation, he never received the photograph of the mower's serial number taken by Stalls had taken in Plaintiff's garage. (Hampshire Dep., p. 52, ll. 8-12; p. 129, l. 18 – p. 130, l. 2). In fact, he never saw the photograph until **September 2020**. (*Id.*).

10

b. The first time Hampshire ever communicated with Stalls was when they exchanged pleasantries at the AUSA's Office on a date well after Plaintiff's arrest. (*Id*., p. 130, l. 3 – p. 131, l. 11).

c. As for the "knock and talk" on <u>November 2, 2016</u>, Hampshire brought Plaintiff's DMV photograph with him to meet with Wilkins. While at the GCSO, Deputy Buskirk ("the pregnant Deputy") recognized Plaintiff as the man in Hampshire's photo. (Hamp. Dep., p. 22, l. 8 – p. 23, l. 6). No one at the GCSO provided Hampshire with Plaintiff's photograph.

d. Upon arriving at Plaintiff's house on <u>November 2, 2016</u>, the exterior garage door was open. (*Id*., p. 79, ll. 3 – 16). No one answered the front door and, because it was covered with some cobwebs, Hampshire surmised the garage was likely used as the Whites' primary entrance. (*Id*., p. 79, l. 18 – p. 80, l. 25; p. 133, l. 2 – p. 134, l. 17). While Hampshire went into Plaintiff's open garage to knock on the closed interior door leading into the house, GCSO Detective Wilkins remained outside on the driveway. (*Id*., p. 134, ll. 18 - 22). No one answered the interior garage door and Hampshire and Wilkins left. (*Id*., p. 134, ll. 10 - 17).

e. During his interview of the Terrys the following day (<u>November 3, 2016</u>), Hampshire (not Wilkins) was the lead investigator and did most of the questioning, while Wilkins' participation was limited to allowing the use of a room at the GCSO . (Hamp. Dep., p. 134, l. 23 – p. 135, l. 21).

11

f. During the next five months, from the Terrys' interview on November 3, 2016 until the search warrants were executed on March 6, 2017, Hampshire received no further assistance from Wilkins or any other GCSO employee. (*Id*., p. 135, l. 22 – p. 136, l. 19).

g. On March 6, 2017, the only assistance GCSO Deputies Fleming and Case contributed at the search of Plaintiff's home was to provide a local law enforcement presence and to sit with Plaintiff's wife. (*Id*., p. 136, l. 20 - p. 137, l. 21).

h. During the search on March 6, 2017, Hampshire found Plaintiff in possession of a stolen John Deere Gator as well as a trailer--serial number of which had been intentionally obliterated. (Hamp. Dep. p. 140, l. 15 – p. 143, l. 5).

i. On November 9, 2016, Hampshire and SBI Agent Denny interviewed Plaintiff. (Hamp. Dep., p. 138, l. 2 – p. 139, l. 14). Plaintiff claimed he bought the mower from an unidentified ***"white male from up north"*** in the parking lot of a local lawn equipment dealer. (*Id*.) Plaintiff offered to scour his phone for this unidentified man's phone number and share it with Hampshire and Denny, but never did. (*Id*.). Plaintiff neglected to mention to the two investigators that the mower was delivered to him by his friend Jeffery Strickland—the same man that Hampshire would later learn was under investigation by the Burlington PD for equipment thefts. (Id. p. 139, l. 15 – p. 140, l. 14).

j. A formal task force was never assembled to investigate Plaintiff and before suit was filed, Hampshire never heard the term "Breaking Bad" used in the investigation. (Hampshire. Dep. p. 67, ll. 4 - 9).

**4. NCSBI Agent Denny:** The following parts of her deposition may be offered:

a. Agent Denny testified that when the search and initial arrest warrants were issued in <u>March 2017</u>, she had no knowledge of GCSO Deputy Stalls' visit to Plaintiff's garage in <u>September 2016</u>. (Denny Dep., p. 70, l. 17 – p. 71, l. 16). She did not become aware of it until after Plaintiff's arrest when he claimed Stalls conducted an unlawful search. (*Id.*).

b. Other than contacting the GCSO to have Deputies present when the search warrants were executed on <u>March 6, 2017</u>, Denny had no communications with the GCSO during her investigation up to that date. (*Id.*).

c. The decision to pursue search and arrest warrants was not based on any information from the GCSO Defendants. (Denny Dep., p.147, l. 7 – p. 148, l. 19). In fact, Denny did not interview Stalls until <u>May 30, 2017</u>—some eleven weeks **after** Plaintiff's arrest. (*Id.*, p.144, l. 7 – p. 145, l. 21). The information provided by Stalls during that interview did not lead to any further investigation, because shortly thereafter Plaintiff's federal prosecution ended. (*Id.*, p. 118, l. 22 – p. 119, l. 11).

d. As for Plaintiff's interview by Denny and RPD Detective Hampshire on <u>November 9, 2016</u>, Denny confirmed the Plaintiff never made good on his promise to help identify the ***"white male from up north"*** who purportedly sold Plaintiff the mower, nor did Plaintiff disclose that he received the mower from his friend Strickland. (Denny. Dep., p.150, l. 2 – p. 151, l. 8). Denny testified that such information would have been highly material to her investigation given that the BPD was investigating Strickland for similar

13

equipment thefts. (*Id.*). Denny also confirmed that no task force named "Breaking Bad" existed to investigate Plaintiff. (Denny. Dep., p.125, ll. 4-11; p. 182, ll. 5-16).

**5.** **Cody Westmoreland:** The following parts of his deposition may be offered:

a. Westmoreland's involvement began in January 2017 with his investigation of Jeffery Strickland concerning the theft of John Deere Gators (an all-terrain utility vehicle). (Westmoreland Dep., p. 5, ll. 5 – 9; p. 8, ll. 17 - 20). This led to criminal charges against Strickland to which Strickland pleaded guilty in September 2020. (*Id.* at p. 21, l. 19 - p. 25, l. 5, and p. 36, l. 7 - p. 37, l. 20).

b. Because Westmoreland's investigation into the stolen Gators required work outside his jurisdiction, the SBI was asked to assist. SBI Agent Denny informed the BPD that the Gator thefts were similar to the mower thefts that RPD Detective Hampshire was investigating. (West. Dep. p. 29, l. 2 - p. 31, l. 4; p. 44, l. 12 - 21). Because of the perceived connection between the Strickland and White matters, an Assistant Alamance County DA directed Westmoreland to obtain an arrest warrant for Plaintiff. (*Id.*, p 56, l. 5 - p. 58, l. 20).

c. In connection with his investigation into Strickland and Plaintiff, Westmoreland never communicated with any GCSO employees. (West. Dep., p 49, l. 16 - p. 50, l. 3).

d. Before his deposition, Westmoreland had never heard of GCSO Defendants Stalls or Wilkins. (Id. p. 86, l. 2 – p. 87, l. 7). He never knew Stalls had taken a photo of the mower's serial number. (*Id.*, p 48, l. 3 - p. 49, l. 7).

14

e. As for the "Breaking Bad" task force, Westmoreland never heard of it. (*Id*., p. 52, ll. 6 – 11). He also denied hearing Plaintiff's name mentioned during the PIG meetings he attended. (*Id*., p. 53, l. 17 - p. 54, l. 11).

**6.** **James Shwochow:** The following parts of his deposition may be offered:

a. Before the search on March 6, 2017, Schwochow had no knowledge of the investigation involving Plaintiff. (Shwochow Dep., p. 25, ll. 2-25). On that day, his supervisor sent him to Plaintiff's home and assist in cataloging the GPD property found there. (*Id*., p. 31, l. 21 – p. 37, l. 1). Shwochow does not know GCSO Defendants Stalls or Wilkins. (*Id*., p. 20, ll. 4-14).

**7.** **Anita Holder:** The following parts of her deposition may be offered:

a. Holder's testimony that she had no personal knowledge as to whether Matt Stalls provided care for Plaintiff's dogs prior to September 3, 2016. (Holder Dep. p 229, ll. 18 – 22).

b. Her testimony concerning the vast scope of her investigation (approximately 4,000 hours) and her deliberate decisions (i) **not** to ask Jeffrey Strickland where he acquired the subject mower; (ii) **not** to investigate the identity of the mystery "white male from up north" who sold the mower to Plaintiff; (iii) **not** to inquire as to the relationship or connection between Jeffrey Strickland and the mystery "white male from up north" who sold the mower to Plaintiff. (Holder Dep., p. 202, l. 16 to p. 209, l. 8).

c. Her testimony concerning Plaintiff's discussions/premonitions about acquiring the subject mower even before it was stolen. That testimony includes, but is not limited to the following:

**A. So the mowers were reported stolen according to the Reidsville report on the 21st. What appears to have happened is prior to that that the plaintiff would have been discussing a possible option to purchase a mower. <u>Again, I've always found this one extremely odd that apparently there were discussions about a mower prior to the time that they would have left the property of Scott's Tractor.</u>**

(Holder Dep., p. 212, l. 14 to p. 213, l. 21).

d. The following testimony concerning Plaintiff's acquisition of the mower:

**Q, (Secor) . . . Based on that almost 30 years of law enforcement experience did you not find it suspicious that your son is negotiating for the purchase of this mower with a stranger at the Sedgefield Lawn and Garden parking lot and that same mower ends up being delivered to his house by Jeffrey Strickland?**

**A. (Holder) That is strange.**

(Holder Dep., p. 208, l. 19 to p. 209, l. 8).

This the <u>4th</u> day of Febuary, 2022.

/s/ J. D. Secor III
James D. Secor III (NCSB #17594)
Guilford County Sheriff's Office
400 W. Washington Street
Greensboro, North Carolina 27401
Telephone: 336-641-3161
Email: jsecor@guilfordcountync.gov
*Attorney for GCSO Defendant Stalls*

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **DEFENDANT STALLS' FINAL PRE-TRIAL DISCLOSURES** were deposited with the United States Postal Service, postage pre-paid and addressed as follows:

Rachel S. Decker
Kenneth R. Keller
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth Street
Greensboro, NC 27401
*Attorneys for Plaintiff*

Patrick M. Kane
William C. Turner Jr.
Fox Rothschild LLP
300 N. Greene Street, Suite 1400
Greensboro, NC 27401
*Attorneys for Greensboro Defendants*

Dan M. Hartzog, Jr.
Michael E. Cohen
Katherine M. Barber-Jones
Cranfill, Sumner & Hartzog LLP
54020 Wade Park Blvd., Suite 300
Raleigh, NC 27607
*Attorneys for Reidsville Defendants*

This the <u>4th</u> day of February, 2022.

/s/ J. D. Secor III
James D. Secor III (NCSB #17594)
*Attorney for GCSO Defendant Stalls*